OPINION
Appellant Kronoslav Muller claims Judge Deborah A. LeBarron erred in denying his notion to withdraw his 1996 plea of no contest and vacate his conviction for domestic violence. He contends that then Acting Judge William Munroe failed: (1) to inform him of the consequences of his plea and the possibility of deportation; (2) to provide him with an interpreter so that he could understand the proceedings; and (3) to comply with Crim.R. 11, resulting in a plea that was neither knowingly or intelligently given. For the following reasons, we agree, reverse and remand.
Muller entered this country from Croatia through a visitor's visa on January 26, 1994 and was to leave before July 26, 1994. His stay was extended through a plea for political asylum and he remains to this day seeking permanent resident status. Sometime before June 1996, however, Muller had married Mevlida Osmic and, along with her adult son, resided at 51 East 242nd Street in Euclid, Ohio.
On June 22, 1996, Mrs. Muller claimed Muller hit her and threatened her with a pistol. He was arrested and charged with one count each of domestic violence; aggravated menacing; and discharging a firearm, all first degree misdemeanors. On June 25, 1996, a motion for a temporary protection order was filed by Mrs. Muller and granted. Unable to make the bond of $27,000, Muller remained in jail, but Judge Niccum granted him a continuance until July 11, 1996, in order to obtain the counsel of his choice.
On July 11th Muller's counsel appeared in court and filed a series of motions: (1) a motion for discovery;. (2) a motion to reduce bond; (3) a motion for an interpreter; and (4) a motion to record all of the proceedings. The motion to reduce bond was denied while the remaining motions never received a ruling.
On July 17, 1996, Muller, before then acting Judge William Munroe, and, pursuant to a plea bargain, entered a plea of no contest to the charge of domestic violence and the remaining two charges were dismissed. The acting judge then sentenced Muller to thirty-six days in jail, credited the twenty-six he had already served, and suspended the remaining ten days. Muller was also fined $350.00.
In June of 1997, the Mullers divorced and Muller is now married to an American citizen.
On April 24, 1998, twenty-one months after Muller was sentenced, he filed a motion to withdraw his plea pursuant to Crim.R. 32.1. On May 6, 1998, Euclid filed an opposing motion. On May 13, 1998, as part of his response to (Euclid's) motion in opposition to withdraw plea, Muller provided an affidavit averring the fact that he is not a U.S. citizen.[1] His motion also included a request for an oral hearing which would have brought to the attention of the judge Muller's level of proficiency in English as well as his alien status. Muller's motion was denied on May 14, 1998. There is no transcript of any court proceedings in this case. Muller claims no recordings were ever made. Euclid counters that the tapes from the arraignment of June 25, 1996 are no longer available due to age and/or reuse. It does not, however, explain the absence of the July 17, 1996 sentencing recording.
Muller assigns three errors for our review. His first assignment of error states:
 I. THE SUCCESSOR TRIAL JUDGE ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW PLEA AND VACATE CONVICTION AND DENYING APPELLANT AN ORAL EVIDENTIARY HEARING WHERE THE PREDECESSOR TRIAL COURT FAILED TO ADVISE APPELLANT OF THE IMMIGRATION CONSEQUENCES OF HIS NO CONTEST PLEA AS REQUIRED UNDER O.R.C. 2943.301.
Muller asserts, pursuant to R.C. 2943.031, that the acting judge committed reversible error when he failed to inform him of the consequences of his plea as it pertained to citizenship. Specifically, Muller contends he was not informed that his no contest plea may have the consequence of deportation since he was not a U.S. citizen and had no legal status in this country.
Euclid counters, by affidavit, that on arraignment days Judge Niccum routinely addressed everyone in the courtroom of the Crim.R. 11 rights, in addition to notice required under R.C.2943.031 and, moreover, Muller never proved to Judge LeBarron he was not a U.S. citizen. The record below contains Muller's affidavit concerning his non-citizenship and, during oral argument, Euclid conceded that he is indeed not a United States citizen.
R.C. 2943.031 provides in pertinent part:
 (A) Except as provided in division (B) of this section, prior to accepting a plea of guilty or a plea of no contest to an indictment, information, or complaint charging a felony or a misdemeanor other than a minor misdemeanor if the defendant previously has not been convicted of or pleaded guilty to a minor misdemeanor, the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement:
 "If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."
 Upon request of the defendant, the court shall allow him additional time to consider the appropriateness of the plea in light of the advisement described in this division.
 (D) Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or no contest and enter a plea of not guilty by reason of insanity, if, after the effective date of this section, the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States * * *. (Emphasis added.)
 (E) In the absence of a record that the court provided the advisement described in division (A) of this section and if the advisement is required by that division, the defendant shall be presumed not to have received the advisement. (Emphasis added.)
The lack of any transcript prevents us from determining whether either judge at either the arraignment or sentencing failed to inform Muller of the possibility of deportation prior to the taking of his plea, and subsequent conviction. Nothing in the record reflects that Muller, incarcerated for three days, was even present during the judge's pre-arraignment discussion of rights etc., or, if present, understood what was being said due to a language barrier.
Euclid points out that in Muller's motion to record proceedings, his attorney expressly acknowledged that Muller desired a recording of the proceeding so that "he may defend himself in any immigration proceedings which may result depending on the disposition herein."
This court has held that:
 [I]n order for R.C. 2943.031 advisements to apply, the record must affirmatively demonstrate that a defendant is not a citizen of the United States through affidavit or other documentation. State v. Thomas (Mar. 18, 1993), Cuyahoga App. Nos. 63719, 63720, unreported. This court has held further that there must be some showing of prejudicial effect caused by the trial court's failure to advise a defendant with respect to possible deportation before a motion to vacate a guilty plea will be granted. State v. Guild (Jan. 13, 1994), Cuyahoga App. No. 63407, unreported.
State v. Isleim (Aug. 18, 1994), Cuyahoga App. No. 66201, unreported.
Euclid contends that even if Muller is not a U.S. citizen, he is still required to provide this court with. evidence of the prejudicial effect to him resulting from the alleged failure to advise. Conviction for domestic violence, a petty offense, it argues, does not mandate deportation and, absent a deportation order, Muller has suffered no prejudice.
Muller asserts that due to this conviction, he is facing possible deportation from the U.S. pursuant to 8. U.S.C. § 1230. Muller was in this country under "nommmigrant" status, and, as a result, was given a voluntary departure date of May 20, 1998. Subsequent I.N.S. proceedings are not part of our record, but Muller still resides in this county and has not submitted any evidence of a deportation order. His situation, however, differs from earlier ones considered by this court in that the absence of such deportation notice is not dispositive of lack of prejudice.
In Isleim, supra, the defendant had permanent resident status but was denied naturalization because of his conviction. This court held he could still reapply or appeal the decision and found no prejudice. Id. In Guild, supra, the defendant failed to include any affidavit or documentation concerning lack of citizenship and had resided in Cuyahoga County in excess of 20 years. There appeared no reason to suggest that a judge's failure to advise Guild about deportation was prejudicial error. Id. InState v. Browley (September 29, 1994), Cuyahoga App. No. 66038, unreported, there was, again, no evidence concerning lack of citizenship, and Browley, a long time resident of Cuyahoga County, failed to demonstrate how he would suffer any prejudice.
Recently, in State v. Felix (April 17, 1997), Cuyahoga App. No. 70898, unreported, the record revealed that the trial judge had failed to advise Felix of the possibility of deportation prior to taking his plea. The then incarcerated defendant presented the trial judge with documentation of his non-citizenship and a deportation order based upon that conviction, but his motion to withdraw his plea was denied. On review, this court reversed and remanded because there was more than sufficient evidence that his conviction "may result in his being subject to deportation."
With Muller, however, we encounter a person who has no legal right to remain in this country unless he changes his status from non-immigrant to immigrant. He entered his plea in July 1996 when domestic violence was not a basis for deportation. Amendments to the 8 U.S.C. § 1227, effective September 26, 1996, added domestic violence as a deportable offense for a legal immigrant. The effect of that offense on one seeking immigrant status is clearly prejudicial. Therefore, any failure by either judge to advise Muller on the subject of non-citizenship would be error.
The first assignment of error is well taken.
The second assignment of error states:
 II. THE SUCCESSOR TRIAL JUDGE ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS PLEA AND VACATE CONVICTION WHERE THE PREDECESSOR TRIAL COURT FAILED TO ADVISE APPELLANT OF HIS RIGHTS PURSUANT TO CRIMINAL RULE 11, AND FAILED TO APPOINT AN INTERPRETER RENDERING APPELLANT'S PLEA INVOLUNTARY AND UNKNOWING.
Muller argues that his guilty plea was not knowingly, voluntarily or intelligently given because he was denied the assistance of an interpreter or given an explanation of his rights in a language he could understand. He alleges a failure to comply with Crim.R. 11 (D) and argues that, pursuant to Crim.R. 32.1, his conviction should be vacated "to correct a manifest injustice". The City of Euclid maintains that Judge Niccum's recitation of rights "en masse" was sufficient to protect Muller's rights of due process as codified under Crim.R. 11 because the interpreter was requested only for assistance at trial, and Muller's attorney was able to communicate with him in Croatian during the plea and sentencing.
Crim.R. 11 (E) requires in pertinent part:
 In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of a plea of guilty, no contest, and not guilty.
In City of Garfield Heights v. Brewer (1984), 17 Ohio App.3d 216,479 N.E.2d 309, second paragraph of the syllabus, this court determined that:
 Crin.R. 11 (E) requires that the record affirmatively demonstrate that a plea of no contest was entered voluntarily, intelligently and knowingly. A meaningful dialogue between the court and the defendant is required whenever the possibility of incarceration exists.
An intelligent and knowing waiver will not be presumed from a silent record. Id. "This rule imposes a mandatory duty on the trial court to advise the accused, and the record must affirmatively demonstrate that the court discharged that duty."City of Cleveland v. Technisort (1985), 20 Ohio App.3d 139,485 N.E.2d 294. The burden rests on the City of Euclid to demonstrate a valid waiver of constitutional rights. State v. Summers (1981),3 Ohio App.3d 234 444 N.E.2d 1041; Brewer, supra.
A judge, in taking a plea, must substantially comply with Crim.R. 11 (E), failure to do so constitutes reversible error.Garfield Heights v. Mancini (1997), 121 Ohio App.3d 155,699 N.E.2d 132. Substantial compliance "means that under the totality of the circumstances a defendant objectively understands the implications of his plea and the rights he is waiving." State v.Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476. Therefore, upon review "a finding of compliance with the rule can be based upon a consideration of the totality of the circumstances surrounding the entry of the plea." State v. Carter
(1979), 60 Ohio St.2d 34, 396 N.E.2d 757. See, also, State v.Nero, supra. Whenever a trial court violates Crim.R. 11 (E), it commits reversible error. City of Cleveland v. Wanzo (August 27, 1998), Cuyahoga App. No. 73264, unreported.
As stated above, there is neither a transcript memorializing the plea proceedings nor documentation of Muller's waiver of his constitutional rights. Summers, supra. Accordingly, Muller's second assignment of error is well taken.
Muller's third assignment of error states:
 III. THE SUCCESSOR TRIAL JUDGE ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW PLEA AND VACATE CONVICTION WHERE THE PREDECESSOR TRIAL COURT FAILED TO RECORD THE PROCEEDINGS AND FAILED TO ENTER A FINAL JUDGMENT OF CONVICTION, THUS THERE IS NO FINAL APPEALABLE ORDER.
Muller seeks to counter any claim that his motions were untimely made by suggesting that no final judgment of his plea and conviction was ever documented in the Euclid Court. He suggests that the judge's notations on the jacket of his files are not journal entries. Euclid counters that the jacket entries are properly time stamped and filed with the clerk of courts.
It is a well established and long standing principle that a judgment of a trial court must be journalized in order to be final as the trial court speaks only through its journal. Stateex rel. Indus. Comm. v. Day (1940), 136 Ohio St. 477,26 N.E.2d 1014, paragraph one of the syllabus. This rule must be adhered to as its requirements "are not met by a mere written minute or an oral pronouncement by a court or judge without the preparation and filing of a journal entry." Id. at paragraph two of the syllabus. Furthermore, in order for an appellate court to obtain subject matter jurisdiction, the. judgment entry must be file stamped. State v. Domers (1991), 61 Ohio St.3d 592, 575 N.E.2d. 832.
The July 17, 1996 plea and sentence were properly journalized in the following entry:
 DEFT'S PLEA — NO CONTEST/FOUND GUILTY. FINE — $350 COSTS — $55 36 DAYS CITY JAIL — CREDIT FOR 26 DAYS SERVED — 10 DAYS SUSPENDED. CONDITIONS OF PROBATION — NO FURTHER VIOLENCE.
Muller's third assignment of error is overruled.
Judgment reversed and cause remanded.
It is ordered that the appellee recover from appellant its costs herein taxed.
It is ordered that a special mandate issue out of this Court directing the Euclid Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P. J. CONCUR:
 MICHAEL J. CORRIGAN, J., DISSENTS (DISSENTING OPINION ATTACHED TO JOURNAL ENTRY)
 ____________________ JUDGE ANNE L. KILBANE
[1] This pleading may not have reached the judge before she rendered her decision.