[Cite as *State v. Davis*, 2014-Ohio-624.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                               :

    Plaintiff-Appellee                      :           C.A. CASE NOS. 25558 and
                                                       25559

v.                                          :           T.C. NO.   CRB1201845
                                                      CRB1201930

DARYL D. DAVIS                              :

    Defendant-Appellant                     :          (Criminal appeal from
                                         Municipal Court)

                                             :

. . . . . . . . . .

# O P I N I O N

Rendered on the 21st day of February, 2014.

. . . . . . . . . .

JOE CLOUD, Atty. Reg. No. 0040301, 3973 Dayton Xenia Road, Beavercreek, Ohio 45432
    Attorney for Plaintiff-Appellee

SCOTT BISSELL, Atty. Reg. No. 0085229, 3080 Ackerman Blvd., Suite 320, Kettering,
Ohio 45429
    Attorney for Defendant-Appellant

. . . . . . . . . .

WELBAUM, J.

    **{¶ 1}**   This case was brought by Plaintiff-Appellee State of Ohio ("the State")

against Defendant-Appellant Daryl D. Davis, ("Davis") in the Vandalia Municipal Court in

two separate case numbers, 12 CRB 1930-A and B and 12 CRB 1845, in which three separate complaints were filed against Davis. Each complaint identifies three kittens as the subjects of animal cruelty. Davis entered a plea of "not guilty" to three complaints of Cruelty to Companion Animals in violation of R.C. 959.131(B). The case proceeded to bench trial on November 19, 2012, and Davis was found guilty on all three complaints. On November 29, 2012, Davis was sentenced to one hundred and eighty days in jail, with one hundred and fifty days suspended on each complaint. The Court allowed Davis to schedule either thirty consecutive days in jail or serve ten consecutive weekends. Additionally, the Court imposed a fine of $1,000.00 with $900.00 suspended on two of the three complaints. Davis was placed on five years probation in case numbers 12 CRB 1930-A and 12 CRB 1845. Davis filed a timely notice of appeal with this Court on December 28, 2012.

I

{¶ 2} In the afternoon of July 27, 2012, Teresa Neal was driving with a friend, Marilyn Shooler, to the Kroger store at North Dixie and Needmore Road in Dayton, Ohio. While traveling "about a car length and a half" behind Davis' Ford Focus, Shooler and Neal saw the first of a succession of kittens thrown from Davis' passenger window while he was traveling southbound on North Dixie. Neal testified she saw the first black cat thrown from the passenger side window of his vehicle, then the cat ran across the three lanes of North Dixie traffic. While they continued to follow Davis, Neal testified she and her passenger were both "freaking out." Further down the road, Neal saw Davis' arm move across the car to the right to throw a second cat out of his passenger side window. The second cat flew out of the window about three feet in the air and hit Neal's own car, striking her bumper, and

then going under the car. Neal stated she could not remember any additional cats being thrown from Davis' vehicle.

{¶ 3} Davis sped up, but Neal continued to follow him until he stopped at an intersection near the Esther Dennis Middle School. Neal exited her vehicle and approached Davis on the driver side of his vehicle. As Davis rolled his window down, Neal told him he was being cruel to animals, but he stated that he did not know what she was talking about and called her a "crazy bitch." Neal testified that she was able to identify Davis and his vehicle and did not see any pet carriers, boxes, or remaining animals in the car.

{¶ 4} Neal's passenger, Shooler, provided similar testimony, yet observed a third cat thrown from Davis' vehicle before they stopped and confronted him. Shooler also described to the court the manner in which the cats were thrown out of Davis' vehicle and provided descriptions of where the cats landed. Shooler testified that the first cat landed by Arthur Street, and the second cat was thrown out of the vehicle near Milano's and flew in the same direction as the first cat before their vehicle struck it. Shooler indicated that after the third cat was thrown from Davis' vehicle, she saw it on the roadway and observed it run into a parking lot. Shooler said when the third cat went flying out of the window, she caught a view of its legs spread apart and testified, "we were close enough to [Davis] that I could see his arm extended."

{¶ 5} Shooler indicated that after the first cat was thrown from the vehicle, she called 911 and was able to report Davis' license plate number. Shooler testified that she also exited the car when Neal confronted Davis at an intersection near Esther Dennis Middle

School. At this point, Shooler could see into the vehicle and also saw no boxes or pet carriers. (Tr. 38)

{¶ 6} Davis testified on his own behalf at trial. Davis asserted that Ms. Neal approached his car and asked "what he had against black cats," and he told her he did not know what she was talking about. At trial, Davis denied using any profane language towards Neal at the time she confronted him in his vehicle, contrary to her testimony. After the verbal confrontation, Davis left, then a few hours later he was contacted by the police. Davis reported to the police station, and was asked if he knew why he was there. Davis answered "yes." Davis was then placed in police custody. Davis subsequently consented to a search of his car, whereupon no cat hair, boxes, or pet carriers were found. Davis told police it was a "misunderstanding and the cats were apparently up under my car and they fell out." Deputy Craig Eaton testified for the State and said that Davis' apartment was only a half of a mile from the location where the second cat was thrown from the vehicle. Photographs of the two dead cats in the roadway were identified by Eaton.

{¶ 7} Christine Meckstroth, Davis' neighbor and acquaintance, stated that she and her husband feed the stray cats that are the subject of these charges. Meckstroth testified that there were originally two adult cats and three kittens around her house, born the end of May or early June. Meckstroth testified that presently there is only one kitten around her house. She and Mr. Meckstroth explained to the court how difficult it was for her and her family to catch the cats, as they would quickly run off when approached by humans. Mecksroth also explained how the cats would on occasion crawl up into the wheels of her

husband's truck, yet she and Mr. Meckstroth testified that to her knowledge, neither of them have driven away with any cats under the vehicle.

## II

{¶ 8}    Davis' first and only assignment of error is as follows:

"THE GUILTY VERDICTS RENDERED BY THE COURT WERE AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE"

{¶ 9}    In his sole assignment of error, Davis contends that the trial court's decision finding him guilty of three counts of Cruelty to Companion Animals in violation of R.C. 959.131(B) is against the manifest weight of the evidence.  Although Davis' assignment is couched in terms of manifest weight, he spends a substantial portion of his argument attacking the sufficiency of the evidence used to convict him.

{¶ 10}   "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69.  "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id*. at ¶ 70.  A claim that a jury verdict is against the manifest weight of the evidence involves a different test.  The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Black,* 181 Ohio App. 3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 69 (2d Dist.)

{¶ 11} Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial, to support one side of the issue, rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1594 (6 Ed. 1990). The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder, be it the jury, or, as in this case, the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL477684, *5 (Aug. 22, 1997) This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.

{¶ 12} The State was required to prove Davis guilty of violating R. C. 959.131(B), which states, "no person shall knowingly torture, torment, needlessly mutilate or maim,

cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal." For purposes of Section 959.131, "companion animal" means any animal that is kept inside a residential dwelling and any dog or cat regardless of where it is kept excluding livestock or wild animals. R.C. 959.131(A)(1).

{¶ 13} Also pursuant to this section, "cruelty," "torment," and "torture" include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief. R.C. 1717.01.

{¶ 14} The trial court correctly noted that while "needlessly kill" is expressly stated in R.C. 959.131(B), Davis need not have killed the third cat. Rather, it is sufficient under the statute for the State to establish that Davis did "torture, torment, needlessly mutilate or maim, cruelly beat . . . or commit an act of cruelty against a companion animal," even if it did not result in death. Thus, the factfinder was correct in finding that the elements of R.C.959.131(B) were proven as to each cat by the manifest weight of the evidence.

Davis argues that the factfinder lost its way in reaching its verdict. Davis contends that since the testimony of the two eyewitnesses differed as to the number of cats that were thrown from the vehicle, it is unreliable and against the manifest weight. Davis contends that after weighing the evidence and considering the credibility of the witnesses, the trial court created such a miscarriage of justice that his convictions must be reversed. Upon review of the record, we find Davis' argument that his convictions are against the manifest weight to be unpersuasive.

{¶ 15} The variation in a detail of the eyewitness testimony does not necessitate discrediting their credibility, as Davis asserts. The discrepancy between the testimony of the two witnesses regarding the number of cats thrown from the vehicle does not require a reversal of Davis' convictions. The factfinder was free to credit the testimony of Ms. Shooler, who said she saw three cats thrown from the moving vehicle, two of which died, and the third escaped. Ms. Neal was the driver, and could easily have been mistaken as to the number of cats due to her focus on the road at the time of the incident, whereas Shooler, who was on the phone with dispatch, was able to watch Davis' car as well as his conduct. Shooler's testimony, which contained a location for where each of the cats landed is simply more detailed. The record supports a finding of cruelty against three cats which were thrown from a moving vehicle, two of which were struck and killed.

{¶ 16} Further, the trial judge wholly rejected Davis' testimony, specifically indicating that it was "not credible." It is the job of the factfinder to weigh the evidence and to determine who is more credible. The trial judge was free to discredit Davis' testimony that the cats were merely underneath his car and fell out. In this case, the mere fact that two eyewitnesses related slightly different versions of the same incident falls short of establishing that the trial court lost its way and created a manifest miscarriage of justice.

{¶ 17} This Court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently obvious that the fact finder lost its way. After reviewing the record as a whole, we cannot say that the factfinder lost its way, resulting in a manifest miscarriage of justice.

III

{¶ 18} Although the record establishes cruelty toward three cats, the record is not

free from error. As previously stated, this case proceeded in two separate case numbers, 12 CRB 1930-A and B, for which there are two complaints, each identifying three cats as the subject of cruelty. A third case number, 12 CRB 1845, in which there is one complaint, also alleges cruelty against three cats pursuant to R.C.959.131(B). The manner in which the State of Ohio elected to draw up the complaints gives rise to error since each individual complaint identifies three cats as the subject of cruelty. However, the evidence adduced at trial established that Davis did not kill or commit acts of cruelty against nine cats, only three.

{¶ 19}   The question then arises whether these errors in the complaints rise to plain error that affects Davis' substantial rights under Crim.R. 52(B) even though the error was not brought to the court's attention. The evidence presented at trial was that on July 27, 2012, the Appellant threw three kittens, in three separate tosses, out of the open passenger window of the car he was driving on North Dixie Drive in the vicinity of Needmore Road. In case number CRB 1201845, he was charged with one count of cruelty against a companion animal. The charge was initiated by a complaint filed July 30, 2012. The handwritten body to the complaint states: "No person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal. X3 To wit: Throwing three kittens from a moving vehicle w/ 1 dying." In case numbers CRB 1201930 A & B, the Appellant was charged with two additional counts of the same offense by separately completed complaints. The first sentence of the body of the complaint for count A is identical to that in case number 1201845. Thereafter, the "X3" is omitted and it concludes: "To wit: Throwing three kittens from a moving vehicle." The

complaint for count B is the same as count A except the word "Throw" is used instead of "Throwing."[1]

{¶ 20} The case was tried to the court on November 19, 2012. The defendant was represented by counsel. At the beginning, the acting judge stated: "[L]ooks like we have a total of three counts, is that right?" (Trial Transcript, 3). The prosecutor stated "Yes."  The court reiterated: "Okay, all three first degree misdemeanors and all occurring on July 27, 2012, is that right?" The prosecutor responded "correct." The court then inquired of the defendant's counsel whether there were any "preliminary matters." Defendant's counsel discussed plea offers that had been made and confirmed the defendant's rejection of them. The trial began. No objection was made to the wording of the complaints and there was no misunderstanding that the State was pursuing three charges for throwing three cats out the window, with two dying.

{¶ 21} The case law regarding cruelty against companion animals solidly supports the concept that offenses involving multiple animals can each be prosecuted as a separate offense. In *State v. Helmbright*, 2013-Ohio-1143, 990 N.E.2d 154, 2013-Ohio-1143 (10th Dist.), the defendant was charged with eleven counts of cruelty against companion animals relating to neglect in the care of eleven cats. The court of appeals surveyed Ohio case law on the subject, both before and after the Ohio Supreme Court's "same conduct" test announced

---

[1]The date complaints A and B were generated is not clear. The date on them appears to be June 26, 2012, which is obviously a clerical error because it is before the date of the offense. These complaints do not have a file stamp. Each contains a summons, with a raised seal, ordering the defendant to appear in court on August 13, 2012. The docket notes on the file jacket indicate the summons were mailed out on August 7, 2012 which would be after the defendant's first appearance for case number 1201845 on July 31, 2012. None of these discrepancies were assigned as error and, in our view, none are plain error.

in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The court of appeals concluded that the eleven counts did not merge because "[e]ven if defendant committed the offenses at issue through the same conduct, a separate animus existed for each animal defendant harmed by his conduct." *Id.* at ¶ 34. The same analysis allows three counts for the three kittens here.

{¶ 22} Because the trial proceeded on three counts for three kittens without objection, we can only review a mistake in the charging instruments if it amounts to plain error. Plain error is recognized where, but for the error, the result of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. An appellate court should exercise the "utmost caution" when taking notice of plain error under Crim.R. 52(B), invoking the rule only "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

> The purpose of a criminal complaint is "to inform the accused of the identity and essential facts constituting the offense charged." *State v. Echemendia*, 6th Dist. Ottawa No. OT–95–059, 1996 WL 475994, *1 (Aug. 23, 1996). A complaint is deemed sufficient if it charges an offense in the words of the statute upon which it is based. *State v. Hadley*, 6th Dist. Fulton No. F–09–007, 2009–Ohio–4595, ¶ 11.

*State v. Hunter* , 2d Dist. Montgomery No. 24844, 2013-Ohio-1469, ¶ 21.

Here the complaints fulfilled their central purpose, and it was apparent that the State

was proceeding on three counts. Even if the terse references about "Throwing 3 kittens" in each complaint was incorrect, a point we do not accept, an objection either would have been overruled, or the State would have been allowed to amend the complaints pursuant to Crim. R. 7(D), and the result would have been the same. We find no plain error since the record shows that the three charges are not duplications of one another.

{¶ 23} The dissenting opinion concluded that the count in CRB 1201930-B lacks a final appealable order.  Although it may not be the easiest to follow, the front of the case file jacket contains a small printed sticker referring to the "A" charge with "1 of 2" written on it. The jacket has a title "Docket/Journal Entry." In the  "Decision/Finding" area, the "G", for guilty, box is checked, as is the box indicating that it was the result of a "Trial." The $1000 fine with $900 suspended is recorded, as is the sentence of 180 days in jail, with 150 suspended, and the option of 30 days in jail or 10 weekends. Probation for "5" years is recorded.

{¶ 24}  Crim.R. 32(C) provides: " * * * The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."

{¶ 25} The form on the outside of the file jacket is signed by the acting judge and file stamped for November 29, 2012, the date of sentencing.  A journal entry may be located on a file jacket if it comports with the Criminal Rules, is signed by the judge, and filed with the clerk.   *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 686 N.E.2d 267 (1997) (appeal dismissed where no evidence that file jacket was signed by the judge and therefore not

journalized); *City of Euclid v. Muller*, 134 Ohio App.3d 737, 745, 732 N.E.2d 410 (8 th Dist. 1999) (evidence that a file jacket entry was signed by the judge and file stamped was sufficient evidence that the sentence was properly journalized).

**{¶ 26}** On the reverse side of the same jacket cover is the printed form titled "journal entry," and it has five sets of boxes or blanks to record findings if there are that many multiple charges. A printed sticker for the "B" charge appears in the first set of boxes. For the "B" charge, an "X" indicates that the defendant was found "G," undoubtedly meaning guilty, and a jail term of "180 " with "150 " suspended with probation for "5yrs" is filled out in the same penmanship referred to on the front of the form. Although the back of the front of the jacket is not separately signed, it is separately file stamped. All of these recordings are consistent with the court's sentence reflected in the transcript of proceedings (6-9) from the November 29, 2012 sentencing. We conclude this documentation creates final appealable orders for both the "A" and "B" charges.

**{¶ 27}** A separate journal entry filed on January 2, 2013, three days after the notice of appeal was filed, and one day prior to the transcript of docket entries was sent to this court, adds to the confusion. It bears case number, 12 CRB 1930, but without reference to either counts A or B. It reflects one sentence rather than the two that were imposed concurrently. Although we are left to decipher how the separate journal entry relates to the journal entries located on both sides of the file jacket, we find that the extra, non specific, journal entry has no effect on the legitimacy of the other two. Therefore, the convictions for the A and B counts have been journalized.

{¶ 28}    We find that the convictions are supported by sufficient evidence and not against the manifest weight of the evidence, there is no plain error in the wording of the complaints under Crim.R. 52(B), and that the convictions were sufficiently journalized as final appealable orders and are properly before us.

{¶ 29}    Judgment affirmed.

. . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurring in part, dissenting in part:

{¶ 30}    I disagree.  I would affirm only one conviction for Cruelty to Companion Animals because each complaint identified three kittens as the subject thereof.   The fact that the State could have charged this in a different manner, i.e., three counts with each count identifying one kitten as the subject thereof or in the alternative, three separate complaints each identifying one kitten as the subject thereof is irrelevant.  The effect of the State's election to charge Davis in the manner it did resulted in a finding of acts of cruelty against nine kittens.   This finding is not supported by the record and constitutes plain error.   This constitutes a violation of Davis' right to be free from Double Jeopardy.

{¶ 31}    Accordingly, I would affirm one conviction in CRB1201845 against three companion animals.  I would vacate the second duplicative conviction in CRB 1201930-A. Finally, because CRB1201930-B does not constitute a final appealable order (it lacks a proper judgment entry and signature of the judge), I would dismiss the appeal thereof for lack of subject matter jurisdiction and instruct the trial court to vacate the finding of guilty

and dismiss the complaint as it is duplicative of the conviction in CRB1201845.

. . . . . . . . . .

Copies mailed to:

Joe Cloud
Scott Bissell
Hon. Cynthia M. Heck

| | |
|---|---|
| Case Name: | *State of Ohio v. Daryl D. Davis* |
| Case No: | Montgomery App. Nos. 25558/25559 |
| Panel: | Donovan, Hall, Welbaum |
| Author: | Jeffrey M. Welbaum |
| Summary: | Appellant's convictions for cruelty to companion animals in violation of R.C. 959.131(B) were supported by sufficient evidence adduced during trial, and were not against the manifest weight of the evidence. This case proceeded in two separate case numbers, 12 CRB 1930-A and B, for which there are two complaints, each involving three cats. A third case number, 12 CRB 1845, in which there is one complaint, also alleged cruelty toward three cats pursuant to R.C.959.131(B). Since the record shows the parties understood the Defendant was globally charged and convicted of abusing only three cats, and there was no objection to the wording of the complaints, there was no violation of Appellant's substantial rights and consequently no plain error under Crim.R. 52(B). The convictions were sufficiently journalized as final appealable orders and properly before this court. Judgment affirmed. (Donovan, J., concurring in part, dissenting in part). |