The STATE of Ohio, Appellee,

v.

BLACK, Appellant.

[Cite as *State v. Black,* 181 Ohio App.3d 821, 2009-Ohio-1629.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22699.

Decided April 3, 2009.

822

824

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Darrell L. Heckman, for appellant.

---

DONOVAN, Presiding Judge.

{¶ 1} Defendant-appellant, Timothy J. Black, appeals his conviction and sentence for one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree.

{¶ 2} On January 10, 2008, Black was charged by indictment with one count of receiving stolen property. Black was arraigned on January 15, 2008, stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 3} Following a two-day jury trial that ended on March 6, 2008, Black was found guilty of receiving stolen property. On March 27, 2008, the trial court sentenced Black to 14 months' imprisonment. The court also ordered Black to pay $50 in restitution, as well as court costs. Black filed a timely notice of appeal with this court on April 8, 2008.

I

{¶ 4} The incident that forms the basis for this appeal occurred on the evening of December 6, 2007, when a silver Chrysler 300–C was stolen from the Talbott Tower parking garage located at 118 West First Street in downtown Dayton, Ohio. The vehicle's owner, Saundra McLemore, arrived at the garage at

approximately 4:45 p.m. A valet parked McLemore's vehicle on the first floor of the garage beside the valet station. The valet left the keys in the vehicle and the doors unlocked, pursuant to the garage's standard operating procedure. After she left her vehicle, McLemore went to her office, which was located in the Talbott Tower.

{¶ 5} Shortly thereafter, a valet working at the garage, James Daniels, testified that he observed a dark-skinned black male dressed in a tan jacket, a gray "hoodie" sweatshirt, and dark gray pants walk by the entrance to the garage just before 6:00 p.m. Daniels testified that a short time after 6:00 p.m., he noticed the same individual as he walked by the entrance to the garage a second time because he looked "inside the garage sort of suspiciously." Daniels testified that although he was unable to discern the individual's facial features, he specifically remembered the clothes the man was wearing. Daniels also testified that the hood on the individual's sweatshirt was pulled down.

{¶ 6} At approximately 7:00 p.m., Daniels testified that he briefly left his post at the valet station to retrieve another vehicle from the basement. When he returned to the valet station, he noticed that the brake lights on McLemore's vehicle were illuminated. Daniels testified that he did not believe that to be important because McLemore's son was known to borrow his mother's car occasionally.

{¶ 7} Daniels testified that he had to leave the valet station again, and when he returned, he observed McLemore's vehicle being backed out of its parking space. Daniels testified that although the driver of the vehicle had pulled the sweatshirt's hood over his head in an attempt to hide his face, he recognized the individual as the man he had observed earlier who was wearing the tan jacket with a gray hoodie. Daniels then watched as the individual drove out of the garage at a high rate of speed. When the police arrived, Daniels described the perpetrator as a black male dressed in a tan jacket, a gray hoodie sweatshirt, and dark gray pants. Dayton Police Officer Gordon Cairns testified that after speaking with Daniels and McLemore, he put out a broadcast containing a description of the stolen vehicle, as well as a description of the clothing worn by the individual suspected of stealing the vehicle.

{¶ 8} At approximately 11:15 p.m. the same night, Dayton Police Officers Andrew Zecchini and his partner observed a vehicle matching the stolen vehicle's description at the intersection of West Grand Avenue and Forest Avenue in Dayton, Ohio. Officer Zecchini also observed two individuals riding in the vehicle. The passenger in the stolen vehicle was a black male dressed in a tan jacket and a gray hoodie sweatshirt, which matched the clothing description provided by Officer Cairns. Officer Zecchini and his partner initiated a stop of the vehicle after it was driven into a parking lot on Grafton Avenue. Officer

Zecchini testified that after the vehicle entered the lot, he activated the cruiser's overhead lights and spotlights. Officer Zecchini testified that he then ordered the two occupants to show their hands and get out of the vehicle. The occupants of the vehicle did not comply with Officer Zecchini's commands and instead, remained in the vehicle apparently talking and listening to music. Thus, Officer Zecchini and his partner physically removed both men from the vehicle and placed them under arrest. The individual who was removed from the passenger side and arrested was later identified as the appellant, Black. Officer Zecchini testified that the clothes worn by Black matched the description provided by the parking lot attendant, Daniels, who had observed the individual who stole the vehicle.

{¶ 9} At trial, Black testified on his own behalf. Black asserted that he was only a passenger in the vehicle and was unaware that it had been stolen. Despite his testimony to the contrary, Black was convicted of receiving stolen property and sentenced accordingly. It is from this judgment that Black now appeals.

## II

{¶ 10} Black's first assignment of error is as follows:

{¶ 11} "The trial court erred in allowing evidence and argument that Mr. Black stole the motor vehicle at issue when Mr. Black was charged only with receiving stolen property."

{¶ 12} In his first assignment, Black contends that the trial court abused its discretion when it allowed the state to introduce evidence that Black stole McLemore's vehicle. Black argues that since he was charged only with receiving stolen property, he was unfairly prejudiced by the admission of irrelevant evidence that sought to establish that he was the individual who stole the vehicle from the parking garage.

{¶ 13} The admission or exclusion of evidence rests soundly within the trial court's discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. The trial court's decision concerning the admission or exclusion of evidence will not be reversed absent an abuse of that discretion. Id. at 182, 31 OBR 375, 510 N.E.2d 343. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 14} It should be noted that although Black objected to the state's assertion during opening statements that Black stole McLemore's vehicle, he did not object to the introduction of that evidence during trial. Because he failed to object at trial on the specific ground raised here, Black has failed to preserve the issue for appeal, limiting us to a plain-error analysis. An error qualifies as "plain error" only if it is obvious that but for the error, the outcome of the proceeding clearly would have been otherwise. *State v. Macias*, Darke App. No. 1562, 2003-Ohio-1565, 2003 WL 1596472, ¶ 19, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108.

{¶ 15} In the instant case, Black was indicted for receiving stolen property, in violation of R.C. 2913.51(A), which states as follows:

{¶ 16} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶ 17} Black asserts that since he was charged with only receiving stolen property, the trial court erred when it allowed the state to introduce evidence that Black stole the vehicle. Thus, Black concludes that any evidence that he stole the vehicle was irrelevant and should have been excluded pursuant to Evid.R. 402. Additionally, Black contends that even if the evidence was relevant to the issue of whether he had knowledge that the vehicle had been stolen, the evidence should have been excluded under Evid.R. 403(A) because any probative value the evidence may have had was outweighed by the danger of unfair prejudice to Black. We disagree.

{¶ 18} Black was not indicted for the theft of McLemore's vehicle. In fact, Black testified at trial that not only did he not steal the vehicle from the parking garage, he did not know that the vehicle had even been stolen. Black testified that he was completely unaware of how his friend, the driver, had come into possession of McLemore's vehicle. He was just along for the ride. If, however, the state were able to establish by "substantial proof" that the theft was initially committed by Black, then it follows that Black would possess the requisite "knowledge" that the vehicle in which he was arrested had been obtained through the commission of a theft offense. "[O]ne who commits a theft necessarily receives the property he steals * * *." *State v. Stevenson*, 181 Ohio App.3d 292, 2009-Ohio-901, 908 N.E.2d 1005, ¶ 22, citing *Maumee v. Geiger* (1976), 45 Ohio St.2d 238, 74 O.O.2d 380, 344 N.E.2d 133.

{¶ 19} Daniels, the parking-lot attendant, testified that he observed a dark-skinned black male dressed in a tan jacket, a gray hoodie sweatshirt, and dark gray pants walking around the entrance to the garage prior to McLemore's vehicle being stolen. Daniels further testified that he recognized the individual

driving away in the vehicle as the man he had observed earlier who was wearing the tan jacket with a gray hoodie. When the police eventually apprehended Black riding in McLemore's stolen vehicle, he matched the description provided by Daniels earlier that evening.

{¶ 20} That Black was the individual who stole the vehicle is clearly relevant as to whether he possessed knowledge that McLemore's vehicle was, in fact, stolen. If Black was aware that the vehicle was stolen, then that fact would bear directly on his culpability regarding the offense of receiving stolen property. Black's argument also implicates Evid.R. 403(A), which provides that a court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." When determining whether the probative value of evidence is substantially outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission. *State v. Lakes,* Montgomery App. No. 21490, 2007-Ohio-325, 2007 WL 196552, ¶ 20. After viewing the evidence in a light most favorable to the proponent (the state, in this instance), the probative value of the evidence outweighed any prejudicial effect its admission may have had on the jury.

{¶ 21} We note that the trial court correctly admitted this evidence under Evid.R. 404(B). Pursuant to Evid.R. 404(B), "evidence that a defendant has committed other crimes, wrongs, or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts." *State v. Weatherspoon* (Sept. 29, 1995), Montgomery App. No. 14459, 1995 WL 570564, *4, citing *State v. Mann* (1985), 19 Ohio St.3d 34, 19 OBR 28, 482 N.E.2d 592. Evidence of other acts is admissible only for the limited purpose of proving motive, opportunity, intent, preparation, plan, *knowledge,* identity, or absence of mistake or accident, and it is admissible only if there is "substantial proof" that the alleged other acts were committed by the defendant. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

{¶ 22} We recently discussed the requirements of Evid.R. 404(B) in *State v. Nucklos,* 171 Ohio App.3d 38, 2007-Ohio-1025, 869 N.E.2d 674, ¶ 86, wherein we held:

{¶ 23} "After stating the basic rule of exclusion, the second sentence of Evid.R. 404(B) indicates that evidence of other crimes, wrongs, or acts may be admissible to prove consequential facts other than conforming conduct. The list of purposes set out is not exclusive or exhaustive. Neither do they constitute exceptions to the prohibitions in the prior sentence. They are merely illustrative of purposes

for which extrinsic evidence may otherwise be offered to prove a fact other than propensity and conforming conduct when that fact is probative of the actor's mental state and relevant to the particular degree of culpability an offense involves. The burden is on the proponent of extrinsic act evidence to demonstrate that the relevancy of the extrinsic act does not pertain to character and conforming conduct. *State v. Skatzes*, 104 Ohio St.3d 195[, 2004-Ohio-6391, 819 N.E.2d 215]." It is apparent from the record before us that the state clearly demonstrated that any evidence it presented that sought to establish that Black stole the vehicle was adduced in order to show that Black was aware that the vehicle had been obtained through theft.

{¶ 24} Thus, the trial court did not err in allowing the state to argue and present evidence that Black stole the vehicle for the purpose of establishing that Black was guilty of receiving stolen property.

{¶ 25} Black's first assignment of error is overruled.

### III

{¶ 26} Black's second assignment of error is as follows:

{¶ 27} "The state committed prosecutorial misconduct."

{¶ 28} In his second assignment, Black argues that the state committed prosecutorial misconduct when it made the following statements during its closing argument:

{¶ 29} "1) Could he have been charged with Theft of a Motor Vehicle on this evidence? We'll leave that to you to decide."

{¶ 30} "2) All the defense is trying to do with that argument is to distract you from the facts."

{¶ 31} Black contends that these statements constituted prosecutorial misconduct that deprived Black of a fair trial.

{¶ 32} Defense counsel did not object during trial to either of these instances of alleged prosecutorial misconduct. Thus, we must review this entire assignment under a plain-error analysis. Crim.R. 52(B) allows a reviewing court to consider errors committed at trial, upon which appellant did not object, only if such errors affected the substantial rights of the appellant. A reviewing court should use the utmost caution in taking notice of plain error and should do so only if it is clear that, but for the error, the result in the trial court would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. Notice of plain error should be taken only in exceptional circumstances and only to prevent a manifest miscarriage of justice. Id., paragraph three of the syllabus.

{¶ 33} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14–15, 14 OBR 317, 470 N.E.2d 883. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. To determine whether the prosecutor's statements were prejudicial, we must review closing arguments in their entirety. *State v. Moritz* (1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92, 407 N.E.2d 1268. Prosecutors and defense counsel have a wide degree of latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293.

{¶ 34} As we previously stated, the trial court correctly held that evidence that Black stole the vehicle was admissible under Evid.R. 404(B) to establish that Black had knowledge that the vehicle was stolen in order to find him guilty of receiving stolen property. While we do find the prosecutor's statement that it was up to the jury to decide whether Black could have been charged with car theft to be improper, that statement does not rise to the level of prosecutorial misconduct because it did not affect the fairness of the trial. The prosecutor should not have asked the jury to speculate regarding the state's reasons for not also charging Black with car theft in addition to the charge for receiving stolen property. The jury, however, was made aware that they were to consider the evidence that Black stole the vehicle only in order to establish that he had known that the vehicle had been obtained through the commission of a theft offense. While the prosecutor's choice of words was less than desirable, we are not prepared to find that this statement was so prejudicial as to deny Black a fair trial.

{¶ 35} Additionally, the prosecutor's statement to the jury that the defense was only trying to distract them from the facts did not constitute prosecutorial misconduct. This court has provided that the prosecution's wide latitude to argue the relative strengths of its case and the relative weakness of the defense "does not extend as far as allowing the prosecution to denigrate the role of defense counsel." *State v. Thompson,* 161 Ohio App.3d 334, 2005-Ohio-2508, 830 N.E.2d 394, at ¶ 33. A thorough review of the record reveals that the state was not trying to denigrate defense counsel when it made the offending statement. During a criminal trial, both the state and the defense present their theories of the case based on the evidence adduced. Here, each party exercised their right to interpret the evidence in a manner favorable to their positions.

{¶ 36} Black's defense centered around his claim that he was unaware that the vehicle had been stolen and that he did not know where his friend had obtained

the vehicle. The state presented evidence that Black had knowledge that the vehicle had been stolen because he matched the description of the thief and was in the vehicle shortly after the commission of the theft. Based on the record before us, the remarks made by the prosecutor do not constitute plain error.

{¶ 37} Black's second assignment of error is overruled.

## IV

{¶ 38} Black's third assignment of error is as follows:

{¶ 39} "The trial court erred in refusing to admit evidence regarding an alternative theory of who stole the motor vehicle at issue."

{¶ 40} In his third assignment, Black contends that the trial court erred when it excluded evidence proffered by the defense that someone else besides Black stole McLemore's vehicle. Black asserts that because the state was allowed to present evidence that he stole the vehicle, Black should have been allowed to present evidence that someone else was the thief.

{¶ 41} The following exchange occurred during defense counsel's cross-examination of Daniels, the parking-garage attendant:

{¶ 42} "Defense Counsel: Do you know an Anthony Derrick?

{¶ 43} "Daniels: Yes.

{¶ 44} "Q: And he used to work there?

{¶ 45} "A: Yes.

{¶ 46} "Q: And he got fired?

{¶ 47} "A: Yes.

{¶ 48} "Q: Okay. Did you fire him?

{¶ 49} "A: No.

{¶ 50} "Q: He was fired by your boss?

{¶ 51} "A: Yes.

{¶ 52} "Q: And that's been a couple of months before this car got stolen; correct?

{¶ 53} "A: Uh * * * I'd say maybe about four or five months before.

{¶ 54} "Q: Four or five months?

{¶ 55} "A: Yeah.

{¶ 56} "Q: Now, he knew your practice since he worked there? How long—do you know how long he had worked there?

{¶ 57} "The State: Objection.

{¶ 58} "Trial Court: It's—it's—if Counsel will approach, please?

{¶ 59} [Side Bar Conference Held as Follows:]

{¶ 60} "Trial Court: Are you suggesting this guy took the car?

{¶ 61} "Defense Counsel: Yes.

{¶ 62} "Trial Court: And what evidence do you have of that?

{¶ 63} "Defense Counsel: Uh * * * one of the things that the detective does, he—he took a—it's in the police report that * * *

{¶ 64} "Trial Court: Mmm hmm.

{¶ 65} "Defense Counsel: * * * it—that he was checking—he was going to check it out.

{¶ 66} "Trial Court: Mmm hmm.

{¶ 67} "Defense Counsel: And he never did. 'Cause he found that—he—'cause—because he found my guys.

{¶ 68} "Trial Court: Okay. But your guys were in the car.

{¶ 69} "Defense Counsel: Yes.

{¶ 70} "Trial Court: Okay. It doesn't matter who stole the car * * *

{¶ 71} "Defense Counsel: That's why * * *

{¶ 72} * * *

{¶ 73} "Trial Court: * * * the issue is, is whether your client received stolen property. He is discussing the issue of the—of the identity of the person in the photographs to go to knowledge.

{¶ 74} "So, the fact that somebody else got fired months before, that—your objection is sustained.

{¶ 75} "The State: I would ask that the testimony be stricken.

{¶ 76} "Trial Court: Okay. That will be sustained also."

{¶ 77} As an initial matter, we agree with Black that the trial court erred when it excluded evidence that a former employee may have been the individual who stole the vehicle on the basis that "it [didn't] matter who stole the car." The identity of the individual who stole the vehicle was put directly at issue by the state, which was allowed to present a great deal of evidence that Black stole McLemore's vehicle. The state presented that evidence in order to establish that Black had knowledge that the vehicle had been obtained through theft, thereby supporting a conviction for receiving stolen property. Clearly, Black should have been afforded the opportunity to present relevant evidence that someone else

stole the vehicle in order to attack the state's theory that he knew that the vehicle had been stolen.

{¶ 78} Upon closer investigation, however, the evidence excluded by the trial court was only an undeveloped lead in a police report. In fact, once the police arrested Black and the other occupant of the vehicle, they abandoned any investigation regarding Anthony Derrick's alleged involvement in the theft. Although Derrick had been fired four or five months earlier, that fact standing alone is insufficient to establish that he, not Black, committed the theft of McLemore's vehicle. Without any additional evidence implicating Derrick as the perpetrator of the theft, the trial court did not abuse its discretion by excluding that evidence. The defense proffered no additional evidence. Although the trial court's rationale for excluding the lead was erroneous, the reference to the police report alone was insufficient to permit defense counsel to suggest that Derrick was the thief. To suggest that because Derrick had been fired, he was the thief is mere speculation and, therefore, inadmissible.

{¶ 79} Black's third assignment of error is overruled.

V

{¶ 80} Because they are interrelated, Black's fourth, fifth, and sixth assignments of error will be discussed together, as follows:

{¶ 81} "Mr. Black's conviction was not supported by sufficient evidence.

{¶ 82} "The trial court erred in overruling Mr. Black's Rule 29 motion.

{¶ 83} "Mr. Black's conviction was against the weight of the evidence."

{¶ 84} In his fourth assignment of error, Black contends that there was insufficient evidence to convict him of receiving stolen property because he testified that he did not know that the car was stolen or how his friend initially came into possession of the vehicle. Black additionally argues that the trial court erred when it overruled his Crim.R. 29 motion for acquittal. Lastly, Black asserts that his conviction for receiving stolen property was against the manifest weight of the evidence.

{¶ 85} "[A] challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991) 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. * * * A claim that a jury verdict is against the manifest weight

of the evidence involves a different test. ' "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." ' " *McKnight* at ¶ 70–71, quoting *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 86} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, *4.

{¶ 87} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 88} Daniels testified that he observed a dark-skinned black male dressed in a tan jacket, a gray hoodie sweatshirt, and dark gray pants walk by the entrance to the garage and look into the garage two times before McLemore's vehicle was stolen. Daniels further testified that although the driver of the vehicle had pulled the sweatshirt's hood over his head in an attempt to hide his face, Daniels recognized the individual as the man he had observed earlier who was wearing the tan jacket with a gray hoodie. When the police arrived, Daniels described the perpetrator as a black male dressed in a tan jacket, a gray hoodie sweatshirt, and dark gray pants. After Officer Zecchini apprehended Black and removed him from the passenger seat of McLemore's vehicle, he testified that the clothes worn by Black matched the description provided by Daniels. The evidence presented by the state implicated Black as the individual who stole the vehicle. If Black stole the vehicle, it follows that he knew that the car had been obtained through the commission of a theft offense for the purposes of receiving

stolen property. Thus, a review of the record convinces us that the state's evidence, taken in its entirety, was sufficient to sustain Black's conviction for receiving stolen property. In light of our holding in this regard, the trial court did not err when it overruled Black's Crim.R. 29(A) motion for acquittal made at the close of the state's case because the evidence presented was sufficient to support his conviction.

{¶ 89} Lastly, Black's conviction is also not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Black presented only minimal evidence in the form of his own testimony, during which he simply maintained that he was unaware that the vehicle was stolen upon accepting a ride with his friend. The jury did not lose its way simply because it chose to believe the state's witnesses, namely, Daniels and Officer Zecchini. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction or that a manifest miscarriage of justice has occurred.

{¶ 90} Black's fourth, fifth, and sixth assignments are overruled.

## VI

{¶ 91} All of Black's assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

FROELICH and WOLFF, JJ., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.