[Cite as *State v. Barker*, 2014-Ohio-1269.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25732 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-477 |
| v. | : | |
| | : | |
| KEVIN J. BARKER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of March, 2014.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ADAM L. NEMANN, Atty. Reg. #0076802, 12463 South High Street, Columbus, Ohio 43206
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Kevin Barker appeals from his conviction and sentence for

Engaging in a Pattern of Corrupt Activity, Promoting Prostitution, and Possession of Criminal

Tools. He contends that he was denied the effective assistance of counsel at trial. He further contends that the State did not present evidence sufficient to support the conviction and that the conviction is against the weight of the evidence.

{¶ 2} We conclude that the claims of ineffective assistance of trial counsel are not supported by the record before us. We further conclude that the evidence presented by the State would permit a rational trier of fact to find Barker guilty of the charged offenses. Finally, we conclude that the judgment is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

## I. Barker's Peekaboodayton Business

{¶ 3} In 2010, Dayton Police Department Vice Unit Detectives began investigating a business which advertised services under the "Escort" section of a website known as Backpage.com. Detectives called the telephone numbers listed in these advertisements and arranged meetings with various women at local hotels. One of the ads showed a woman with her hand in her underwear. Two others showed women with their buttocks exposed. One picture had a woman posing in her bra and another showed a woman reclining with her buttocks exposed. One of the advertisements showed a woman's naked torso with her breasts and vaginal area covered in strawberries and cream. One breast was partially exposed. Some of the pictures of the ads were found stored on Barker's cell phones and laptop computer.

{¶ 4} Three women were thereafter arrested for, and convicted of, solicitation. A fourth woman was arrested on an unrelated warrant. The telephone numbers given in the advertisements were tracked to Barker whom, the detectives determined, operated a business

known as Peekaboodayton. The detectives subpoenaed records from Backpage.com and ultimately determined that the advertisements on Backpage.com had been placed and paid for by Barker.

**{¶ 5}** Detective Molly Hamby made contact with Barker and pretended to be interested in working for the business. Barker and Hamby made arrangements to meet at a local bar. Barker brought one of his employees, Nicole Ford, to the meeting. When Hamby asked Barker what was expected of employment, Barker replied, "[a]ll guys want is sex." Throughout the meeting Barker made statements that he did not encourage his employees to engage in sexual acts with clients. He also stated that he thought having sex was not worth the price paid by clients. He made a statement that he did not want Hamby to "f**k anybody or suck anybody," but that if a client had lots of money the employee could "go ahead and jack them off." Barker further stated that if an employee was in a room with a client and felt "comfortable, [then] what she decides to do with the client was her call." He also told her that she might go on appointments where a client requested that two women "got down with" each other while the client watched. Barker told Hamby that he could not tell her how much to charge for sexual activity, but he did tell her that she should never be the first to "throw a number out." Nicole Ford stated that she had engaged in sex with clients with whom she had been sent on dates. The meeting was recorded by other detectives at the scene.

**{¶ 6}** Detectives obtained a search warrant for Barker's residence which was the mailing address he used when creating his account with Backpage.com. Detectives met there with Barker's wife, from whom he was separated, and determined that Barker was living in Trotwood with his girlfriend. Detectives went to the Trotwood home and spoke to him. He

invited them into his home and consented to a search of the premises. The detectives obtained a laptop computer, two cellular telephones and some employment contracts.

{¶ 7} It was determined that the two cellular telephones had the phone numbers listed on Backpage.com and were also utilized to arrange meetings with the Peekaboodayton employees who were subsequently arrested for solicitation. Barker admitted to the detectives that he owned Peekaboodayton and that he placed the Backpage.com advertisements. He stated that he ran a legitimate business. The business began as "Honey's," then changed to "G Wet Spot" before changing its name to Peekaboodayton.

{¶ 8} One of the women arrested for solicitation during a sting operation testified that she worked for Barker and Peekaboo and that she and the other female employees discussed, in Barker's presence, the fact that they engaged in sex with clients. However, she also stated that she was not certain that Barker knew that sex was occurring. She testified that Barker drove her to and from her appointments, had her sign a contract, and personally took pictures of her to post on the internet. The woman testified that sex was involved in "probably twenty or more" jobs to which she was sent. She testified that she was a prostitute and that Barker was "basically [her] pimp." The woman testified that Barker drove her to her meeting with Detective St. Clair and that during the ride Barker stated that he "had a bad feeling" about the meeting. She testified that she continued to work for Barker following her arrest for solicitation.

{¶ 9} David Barnes, a Special Agent with the FBI assigned as laboratory director at the Miami Valley Regional Computer Forensic Lab, testified that during his examination of the laptop obtained from Barker's residence he found evidence that the computer was used to access Backpage.com. He further found evidence of research regarding a Cincinnati prostitution ring as

well as ten other "hits" on the term "prostitution."

{¶ 10} Detective Doug George testified that in his experience as a Vice Detective, he was aware that prostitutes posted in the "escort" section of the "adult" section of Backpage.com. As part of this investigation, George responded to an ad on Backpage.com that indicated that a girl was available to go to a hotel and had a Barker's telephone number listed in the ad. No one answered his call, but George later received a call from a woman who identified herself as "Megan." George met the woman at a local hotel. The woman asked him if he had "protection." They then proceeded to go to a gas station and purchase condoms. The woman and George agreed to a price for sex. Ultimately, the woman was arrested and convicted of solicitation.

{¶ 11} George also responded to a Peedaboodayton ad featuring a woman clad in underwear with her buttocks in full view. Again, the ad had Barker's telephone number. A meeting was arranged with that woman at a hotel in Butler Township. George and the woman reached an agreement regarding money for sex. At that point, Detective St. Clair called George's cell phone and, posing as George's boss, stated that he was coming to George's room. George and the woman agreed that she would leave and wait across the street until George finished his meeting and called her. She gave him her cell phone number and left. The woman was subsequently arrested on an unrelated warrant. George testified that she was not charged with solicitation, because the meeting did not take place in Dayton.

{¶ 12} Detective Raymond St. Clair testified that he has made more then 2,500 arrests for prostitution, and has attended training seminars on the subject. He testified that he targets "escort" agencies under the "adult" section of advertisements because he has never responded to

an ad of that description that did not result in a solicitation for prostitution. He testified that his investigations into the stripper, strip club, massage, and dating sections of the adult section had never resulted in prostitution.

{¶ 13} St. Clair, responding to Barker's ad, met a woman at a hotel. After exchanging money, the woman was arrested and convicted of soliciting prostitution.

{¶ 14} St. Clair testified that he responded to another ad traced to Peekaboo and Barker that showed a woman dressed in a thong with her backside to the camera. St. Clair testified that the ad drew his attention because it stated "[y]ou can enjoy everything on my menu[,]" which he testified is a "prostitution term which refers to oral, vaginal and anal sex." He also noticed that she mentioned her "rates." The telephone number listed on this ad was later traced to Barker. Upon calling the number, St. Clair spoke with a woman who identified herself as April. She asked him if he was looking for "GFE" which he testified is a prostitute term meaning "girlfriend experience which is sex with kissing." The woman also stated that the rate would be $160 and she would send someone to meet him. He met a woman at a Dayton hotel. She stated that she was made aware that he wanted "everything." This woman was also arrested and convicted of soliciting prostitution.

{¶ 15} St. Clair testified that after the investigation netted four separate arrests for solicitation for prostitution he subpoenaed records from Backpage.com and learned that the advertisements contained e-mail addresses and telephone numbers belonging to Barker. The ads were charged to a credit card belonging to Barker's estranged wife.[1]

{¶ 16} St. Clair found a website for Peekaboodayton.com that had a disclaimer stating

---

[1] Barker later informed the detectives that he reimbursed his wife for each ad placed using her credit card.

that the company was a company of "independent entertainers" who "do not condone or support any kind of prostitution activity." St. Clair testified that in his experience, this type of disclaimer is typical of a pimp trying to "wash his hands of his prostitutes." The telephone number listed on the home page of the website belongs to Barker. The website contained pictures of women along with their height, weight and bra size. Some of the pictures were of girls in underwear or bikinis. This website was also traced to Barker. St. Clair then made arrangements for Detective Hamby to interview with Barker.

{¶ 17} A search warrant was issued for Barker's home. Barker was living with his girlfriend and consented to a search of their residence. The Peekaboo website was shut down minutes after the detectives searched Barker's residence.

{¶ 18} Nicole Ford testified that Barker was aware that some of her appointments involved sex. She further testified that Barker would drive her to and from her appointments.

## II.  The Course of Proceedings

{¶ 19} Barker was indicted on one count of Engaging in a Pattern of Corrupt Activity in violation of R.C. 2929.32(A)(1), two counts of Promoting Prostitution in violation of R.C. 2907.22(A)(2), and three counts of Possession of Criminal Tools in violation of R.C. 2923.24(A).

{¶ 20} Following trial Barker was convicted on all charges and sentenced to a prison term of six years. Barker appeals.

## III.  Barker's Claim of Ineffective Assistance of Counsel
## Is Not Supported in the Record of this Appeal

{¶ 21} Barker's First Assignment of Error states as follows:

APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO

EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 22} Barker contends that trial counsel was ineffective because he failed to: (1) develop, and inform Barker of, a trial theory; (2) provide Barker with discovery; (3) interview witnesses or present witnesses requested by Barker; (4) impeach witnesses with police reports; (5) investigate other advertisements placed by Barker which demonstrate that he was a legitimate businessman; (6) investigate a recanting witness; and (7) consult with Barker.

{¶ 23} To prevail on his ineffective-assistance claim, Barker must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *Id*. at 694.

{¶ 24} Barker does not cite to any portion of the record to support his claims. Instead, he attaches to his appellate brief an affidavit in which he avers that trial counsel was deficient in the above-cited ways. In a Decision and Entry dated November 19, 2013, upon motion of the State, we struck the affidavit as being outside of the record of this appeal. We cannot consider matters outside the record in a direct appeal. *State v. Pittman*, 2d Dist. Montgomery No. 25167, 2013-Ohio-962, ¶ 13, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229, 448 N.E.2d 452 (1983).

{¶ 25} Upon review, we find nothing in the record to lend support to Barker's claims of ineffective assistance of counsel. It appears from the record that trial counsel had a theory of the case, which constituted, in part, of presenting Barker as a responsible man with a military

background who ran a legitimate business. He further portrayed Barker as having been unfortunate to hire some women who were not trustworthy and who violated the terms of their contracts by engaging in sexual acts with customers. Whether counsel informed Barker of that theory, or provided him with discovery materials, is not something that can be gleaned from the record. Likewise, whether counsel consulted with Barker, investigated witnesses or advertisements, or failed to present or interview necessary witnesses is not something we can determine from this record. Finally, it appears that counsel did make reference to police reports during his cross-examination of the witnesses presented by the State.

{¶ 26} Barker's First Assignment of Error is overruled.

### IV. Barker's Convictions Are Supported by Sufficient Evidence
### and Are Not Against the Manifest Weight of the Evidence

{¶ 27} Barker's Second and Third Assignments of Error provide:

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

THE EVIDENCE AGAINST MR. BARKER WAS INSUFFICIENT TO SUSTAIN A JURY VERDICT OF GUILTY.

{¶ 28} Barker contends that the record does not contain evidence sufficient to sustain his convictions and that the convictions are not supported by the manifest weight of the evidence.

{¶ 29} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is

whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.* at ¶ 70. A claim that a jury verdict is against the manifest weight of the evidence involves a different test. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 69 (2d Dist.).

{¶ 30} "Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial, to support one side of the issue, rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1594 (6th Ed.1990). The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder, be it the jury, or, as in this case, the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 477684, *5 (Aug. 22, 1997). This court will not substitute its

judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.

{¶ 31} The State was required to prove Barker guilty of Promoting Prostitution in violation of R.C. 2907.22(A)(2) which states that "[n]o person shall knowingly * * * [s]upervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire." "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 32} Barker contends that he "operated an agency for women to perform massages, private dances, and entertain at bachelor parties." He claims that he actively discouraged the women from engaging in sexual activity with clients of the business. He notes that his contracts with the women explicitly state that the women will not "participate in any form of prostitution or soliciting of money for sexual services." He further notes that the business website contained a disclaimer that the company did not condone prostitution. He also argues that he thought Hamby had her "own clientele who she engaged in sexual activities," and that was why he expressed his opinion on her "performing manual sex on a client." Finally, he argues that the record reveals that the four encounters between the detectives and the women who solicited them cannot be traced to his agency.

{¶ 33} We disagree with Barker's assessment of the evidence. There is evidence that, if believed, supports a finding that the four encounters between the detectives and the women who were subsequently arrested resulted from advertisements posted by Barker on behalf of his company. The advertisements used pictures found on Barker's phone and laptop; and there is

evidence that he was responsible for taking the pictures. Furthermore, the calls made to the women as a result of the ad were made to telephones belonging to Barker. There is evidence that Barker drove his employees to their appointments with clients and was aware that they were engaging in sexual activity with the clients. Indeed, there is evidence in the record that the woman who testified that Barker knew she was arrested for prostitution was not fired. Furthermore, there is evidence that Barker did not fire Nicole Ford, despite knowing that she engaged in sex with clients. There is also evidence that Barker took a cut of each woman's earnings from her appointments. Regardless of his disclaimers concerning sex, the evidence supports a finding that Barker managed a business that engaged women to act as prostitutes. We conclude that this evidence is sufficient to prove the offense of Promoting Prostitution, and that this conviction is not against the manifest weight of the evidence.

{¶ 34} Barker was also convicted of Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1), which states that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." An enterprise "includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. [An enterprise] includes illicit as well as licit enterprises." R.C. 2923.31(C). A " 'pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). "Corrupt

activity" consists of "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * [a]ny violation of section 2907.22 [Promoting Prostitution]." R.C. 2923.31(I)(2)(c). "The existence of an enterprise is an element distinct from the pattern of [corrupt] activity and proof of one does not necessarily establish the other." *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, ¶ 29, citing *U.S. v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

**{¶ 35}** In this case, there is evidence that Peekaboodayton is an enterprise owned by Barker, who is helped in running the business by his girlfriend.[2] This enterprise is, according to Barker, a legitimate business designed to provide adult entertainment in the form of private dances and massages. The business made disclaimers of prostitution through its website and its employment contracts. There is evidence that some of the entertainment provided by the business was merely legal adult entertainment. Barker admitted that he posted, and paid for, the advertisements for each of the women working for Peekaboodayton. He also provided the phones that the clients were directed to call. He took the women to and from their engagements, and took a portion of each woman's fees.

**{¶ 36}** There is also evidence to support multiple convictions for Promoting Prostitution, which are the basis for the "pattern of corrupt activity element" of Engaging in Corrupt Activity. Barker was aware that the women his company hired were engaging in prostitution while on assignments for the company. There is also evidence that four different women responded on behalf of Peekaboodayton to calls placed by Dayton Vice Detectives George and St. Clair from

---

[2] There is testimony in the record that, if believed, established that the girlfriend handled some of the incoming phone calls from potential clients.

November 2010 to May 2011. Those women offered the detectives sex in exchange for money. Furthermore, there is evidence that one of those women had engaged in sex for money on assignments to which Barker had sent them on at least twenty prior occasions, and one had done so on at least 75 different occasions. This evidence is corroborated by Barker's interview with Detective Hamby indicating that Barker was aware that the women were performing sexual acts for money.

{¶ 37} We conclude that there is sufficient, credible evidence to support Barker's conviction for Engaging in a Pattern of Corrupt Activity, and that conviction is not against the manifest weight of the evidence.

{¶ 38} Finally, Barker was convicted of Possession of Criminal Tools, in violation of R.C. 2923.24(A). That statute states, "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 39} These charges relate to the laptop computer and two cellular telephones that were taken from Barker. There is evidence in the record sufficient to prove, beyond reasonable doubt, that Barker used these items for the purpose of Promoting Prostitution. The Possession of Criminal Tools convictions are not against the manifest weight of the evidence.

{¶ 40} We conclude that the State presented evidence sufficient to prove beyond reasonable doubt that Barker committed the charged offenses. We further conclude that this is

not the rare case where the jury lost its way and its verdicts are against the manifest weight of the evidence.   Accordingly, the Second and Third Assignments of Error are overruled.

### V.   Conclusion

**{¶ 41}**   All of Barker's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Adam L. Nemann
Hon. Barbara P. Gorman