[Cite as *State v. Cullins*, 2014-Ohio-2202.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25476 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-55 |
| v. | : | |
| | : | |
| LORENZO L. CULLINS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of May, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

MICHAEL B. MILLER, Atty. Reg. #0079305, Rogers & Greenberg, LLP, 2160 Kettering Tower, Dayton, Ohio 45423
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Lorenzo Cullins appeals from his conviction and sentence,

following a bench trial, for Theft by Deception, in violation of R.C. 2913.02(A)(3), a felony of the fifth degree. Cullins contends that the State failed to present sufficient evidence to support every element of the offense. Cullins also contends that his conviction is against the manifest weight of the evidence.

{¶ 2}     We conclude the State provided sufficient evidence for a rational trier of fact to find Cullins guilty of Theft by Deception.   We also conclude that the judgment is not against the manifest weight of the evidence.   Accordingly, the judgment of the trial court is Affirmed.

### I. Cullins Goes to the Emergency Room for Chest Pain
### and Provides a False Name and Social Security Number

{¶ 3}     In December 2011, Lorenzo Cullins went to the emergency room at Kettering Medical Center for treatment of heart palpitations. When he checked in with Donna Bush, the register admitting clerk, he provided the name Lorenzo Lander, and a social security number that was three digits different from his actual number. The social security number Cullins provided was determined to be that of Alonzo Zamorra, with a California address. Bush testified that she asked Cullins if he had ever lived there, and Cullins replied "something like, 'yes, a long time ago' or something — I don't recall the exact words." Tr. p. 19. Because the social security number Cullins provided did not match the name he provided (Lorenzo Lander), Bush called the security department.

{¶ 4}     Mike Emmons, a seventeen-year investigator with the Kettering Security Department, was assigned to investigate. Emmons spoke with Cullins in the emergency room and read back to him the social security number Cullins had provided; Cullins verified that it was the

number he had provided to the registration department earlier that day. When Emmons explained that the social security number Cullins provided was coming back as a California address, Cullins replied that "he just came from California, but not from that address and not from that city." *Id.* at 9. Emmons asked Cullins for identification; Cullins replied that he had an Oregon ID, but could not present it. Emmons then left the emergency room and returned to his office to speak with his chief.

{¶ 5}   Patrick Bernard, Director of Security at Kettering Medical Center, began to search Justiceweb, a computer program used to identify suspects. When Bernard found a photograph of Cullins, he showed it to Officers Emmons and Driscol, who showed it to the registration department. Bernard testified that Emmons confirmed with the registration department that the picture of Cullins from Justiceweb matched the man who had been in the emergency room on December 14, 2011.

{¶ 6}   Diana Scott, keeper of the billing records for Kettering Health Network, identified State's Exh.'s 2 and 3 as two bills from December 14, 2011, each with the name Lorenzo Lander as the patient/guarantor. She testified that the bill from the emergency room doctor was for $697, and the bill from Kettering Medical Center was $4,412.46.

{¶ 7}   When contacted at his home by Kettering Police Detectives Chris Murray and another officer, Cullins admitted that he was at the emergency room of Kettering Medical Center on December 14, 2011. Detective Murray asked Cullins if he went there to obtain illegal drugs under somebody else's name; Cullins responded in the negative. According to Murray, Cullins said that he provided false information because he "didn't want to be treated like a frequent flyer without insurance." Cullins said that "he understood that his social security number was wrong";

the first three digits were incorrect. Cullins also provided a written statement:

> I Lorenzo was at Kettering Hospital [and] was needing treatment and used a false name Lorezno Lander and didn't have insurance and I appoligize [sic] and will be responsible for the payment of bill.

State's Exh. 3.

## II. The Course of Proceedings

{¶ 8} Cullins was charged by indictment with one count of Theft by Deception, in violation of R.C. 2913.02(A)(3), a fifth-degree felony because the value of services Cullins received was between \$1,000 and \$7,500. R.C. 2913.02(B)(2). Following a bench trial, Cullins was convicted and sentenced. He appeals.

{¶ 9} On appeal, appellate counsel initially assigned to represent Cullins submitted a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that she could not find a potential assignment of error having arguable merit. In a June 6, 2013 decision and entry we rejected counsel's *Anders* brief, assigned new counsel, and identified a potential assignment of error that did not appear to be frivolous:

> It appears from the record that the State proved, at most, that Cullins had a subjective belief that he would obtain more, or better, services at the emergency room if the hospital believed he was an affluent person who could afford to pay for the services. Arguably, however, Cullins's subjective belief to that effect is not probative of the factual proposition that the hospital and the physician would, in fact, actually provide more, or better services, if they believed the individual being

treated to be an affluent person who could afford to pay for the services.

Four of the five witnesses who testified at trial were employees of the hospital. None of them testified that an individual presenting at the emergency room for treatment would receive more, or better, services, if the individual was an affluent person who could afford to pay, as opposed to an indigent person who could not afford to pay. Under these circumstances, we conclude that there is an issue for appeal that is not wholly frivolous: Did the State fail to prove, beyond reasonable doubt, that Cullins obtained the property or services of the hospital and the emergency room physician by means of deception?

* * *

In reaching this conclusion, we note that we are not deciding this issue on the merits; we are merely determining that this issue is not wholly frivolous, so that it would support a potential assignment of error having arguable merit.

{¶ 10}　New appellate counsel has filed a brief in accordance with our directive.

**III. The Trial Court Could Reasonably Find, from the Evidence in the Record, that Cullins Had as at Least One of his Purposes in Providing False Identifying Information, the Purpose to Avoid Having to Pay for the Services the Hospital Provided, which Meets the Definition of "to Deprive" in R.C. 2913.01(A)(3)**

{¶ 11}　Cullins's First and Second Assignments of Error state:

THE FINDING BY THE TRIAL COURT OF GUILT AS TO THEFT BY DECEPTION WAS AGAINST THE MANIFEST WEIGHT OF THE

EVIDENCE.

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY TRIAL COURT OF GUILTY AS TO THEFT BY DECEPTION.

{¶ 12}   Cullins contends that he lacked the requisite intent to deceive Kettering Medical Center of its services because "the only evidence of any purpose or intent was [Cullins] stated to police that he did not want to be seen as a 'frequent flyer' "; that is, someone without insurance. Cullins contends that federal law requires Kettering Medical Center to provide treatment to any patient regardless of their name or financial situation; therefore, the fact that he gave false information did not result in services being provided to him that would not otherwise have been provided to him.

{¶ 13}   "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight,* 107 Ohio St. 3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69.   In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at ¶ 70 (Internal citation omitted.) A claim that a verdict is against the manifest weight of the evidence involves a different test. *See State v. Barker,* 2d Dist. Montgomery No. 25732, 2014-Ohio-1269, ¶ 29. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs

heavily against the conviction. *Id.* (citing *State v. Black,* 181 Ohio App. 3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 69 (2d Dist.)).

**{¶ 14}** "Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial, to support one side of the issue, rather than the other." *State v. Thompkins,* 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997) (citing *Black's Law Dictionary* 1594 (6th Ed. 1990)). The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *Barker, supra,* at ¶ 30 (citing *State v. DeHass,* 10 Ohio St. 2d 230, 227 N.E.2d 212 (1967)). "Because the factfinder, be it the jury or, as in this case, the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The decision whether, and to what extent, to credit the testimony of particular witnesses is "within the peculiar competence of the factfinder, who has seen and heard the witnesses." *Id.* This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.

**{¶ 15}** The State was required to prove Cullins guilty of Theft by Deception in violation of R.C. 2913.02(A)(3), which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services

in any of the following ways: * * * (3) [b]y deception[.]"[1] The Ohio legislature has defined both "deception" and "deprive" in the statute:

"Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

R.C. 2913.01(A).

"Deprive" means to do any of the following:

(1) * * *;

(2) * * *;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C).

{¶ 16} Cullins contends that he did not act with the "purpose" to deprive Kettering Medical Center of its services because he explained to the police that he provided false information to avoid being treated like a frequent flyer. According to Cullins, then, his explanation that he provided false information to avoid being treated like a frequent flyer

---

[1] If the value of the property or services stolen is "one thousand dollars or more and is less than seven thousand five hundred dollars * * * a violation of this section is theft, a felony of the fifth degree." R.C. 2913.02(B)(2).

establishes that the State failed to satisfy the first portion of the statute, "[n]o person, with purpose to deprive the owner of its property or services, * * * " R.C. 2913.02(A)(3).

{¶ 17}   We disagree. The term "deprive," for purposes of R.C. 2913.02, is defined in the statute; an individual's conduct falls within the meaning of "deprive" if he "[a]ccept[s], use[s], or appropriate[s] money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration." R.C. 2913.01(C)(3). Moreover,"because it is difficult to prove a defendant's mental state by direct evidence, a defendant's intent is determined by considering the surrounding facts and circumstances." *State v. Wells,* 2d Dist. Champaign No. 2008CA6, 2009-Ohio-908, ¶ 38. "[P]ersons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *State v. Garner*, 74 Ohio St. 3d 49, 60, 656 N.E.2d 623 (1995).

{¶ 18}   In the case before us there is evidence that, if believed, supports a finding that Cullins provided false information with the purpose not to give proper consideration; i.e., to pay for, the medical services that he received. At trial, the State introduced evidence that Defendant, Lorenzo Cullins, entered Kettering Medical Center and provided a false name and a false social security number to the registration department. When Michael Emmons, an employee of the Kettering Medical Security Department, spoke to Cullins in the emergency room, he told Cullins the social security number he provided was determined to be that of a person named Alonzo Zamorra, from California. Tr. p. 9.  In response, Cullins did not acknowledge that he was not Alonzo Zamorra and that he had provided a false social security number; instead, he replied, "I just came from California, but not from that address and not from that city." *Id.* When

approached by a second hospital employee, Patrick Bernard, Director of Security at Kettering Medical Center, Cullins continued to lie about his name and social security number. When Bernard reiterated that the social security number he provided was coming back as corresponding to an address in California, Cullins again failed to provide his real name and social security number, explaining that he used to live there "a long time ago." *Id.* at 18.[2]

{¶ 19}  Finally, when Detectives Murray and Stuart talked to Cullins at his home, Cullins admitted that he had provided false information, explaining that he did not want to be treated like a frequent flyer. Cullins then provided a written statement, State's Exh. 3, acknowledging that he provided false information and that he would be responsible for the bill.

{¶ 20}  We conclude the evidence supports a finding that Cullins provided false information with the purpose not to pay for the hospital services that he received: Cullins lied about his identity to three hospital employees; he failed to pay his bill; and he admitted to Detective Murray – both orally and in a written statement – that he provided false information. It was reasonable for the trial court, as the trier of fact, to reject the argument that Cullins's only purpose in providing false information was to avoid being treated like a frequent flyer, and infer that another purpose was to avoid paying for the hospital services he received.

{¶ 21}  Cullins next argues that he did not "knowingly obtain any property or services," from Kettering Medical Center because "the hospital is required to treat all emergency patients regardless of his or her identification or ability to pay." Cullins relies on federal law, 42 U.S.C. 1395, for this proposition. Title 42 of the United States Code, Section 1395, provides, in relevant

---

[2] Bernard testified that he did not recall the exact words that Cullins used when responding to his question.

part:

(a) Medical screening requirement

In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, *the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department*, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

(b) Necessary stabilizing treatment for emergency medical conditions and labor

(1) In general

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either--

(A) within the staff and facilities available at the hospital, *for such further medical examination and such treatment as may be required to stabilize the medical condition*, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. 1395dd (Emphasis added).

**{¶ 22}** Cullins is correct that this federal statute requires hospitals to *provide* appropriate medical treatment in certain circumstances. But noticeably missing from the statute is a requirement that hospitals provide those services for free, without any expectation that they will be paid for those services, to the extent that the patient, or the patient's guarantor, is able to pay. At most, 42 U.S.C. 1395dd requires a hospital to perform the necessary treatment to "screen" or "stabilize" a patient regardless whether the hospital has already been paid for those services. Federal law, therefore, does not provide a defense to a charge of Theft by Deception, which imposes criminal liability on an individual who knowingly accepts or uses services with the purpose not to pay for the services he or she receives by means of deception. R.C. 2913.02(A)(3), 2913.01(C).

**{¶ 23}** Both parties dispute the applicability of *State v. Edmundson,* 92 Ohio St. 3d 393, 750 N.E.2d 597 (2001), a theft-by-deception case involving welfare benefits. In *Edmundson,* the defendant failed to disclose on her welfare application that she was employed, and as a result received more benefits than she would have received from the Montgomery County Department of Human Services had she provided truthful information. *Id.* at 394. The only issue before the Supreme Court of Ohio was whether *Edmundson* had stolen the *total* amount of benefits that the MCDHS distributed to her following the deception, or only the amount exceeding what she would have been eligible to receive had she provided truthful information. *Id.* at 393. The Supreme Court held that the total amount stolen was the correct figure, reasoning that the defendant was not entitled to any benefits until the MCDHS actually determined her eligibility based on her application. *Id.* at 397. The Supreme Court also concluded, as the State points out, that "[t]he State does not have to prove the additional fact * * * that the accused obtained benefits

for which he or she was not otherwise eligible absent deception." *Id.* at 398-399.

**{¶ 24}** Cullins distinguishes *Edmundson* on the grounds that the defendant in that case submitted false information to a government agency, which caused her to receive *"more* benefits than she would have had she not misrepresented information." Reply Brief, p. 5 (Emphasis sic.) Cullins contends that, unlike *Edmundson,* he never obtained a "greater benefit" than what he was already entitled to: "[t]he only 'benefit' received by Cullins was in the form of treatment required, by federal law, to be provided to him." *Id.*

**{¶ 25}** While it may be true that Cullins did not receive "more" or "better" treatment than was required under federal law, no provision of federal law required the hospital to refrain from attempting to collect payment for those services. Because there is sufficient evidence in the record to establish that Cullins knowingly provided false information with a purpose not to pay for the services rendered at Kettering Medical Center, Cullins's conduct falls within the ambit of R.C. 2913.02(A)(3).

**{¶ 26}** Additionally, after reviewing the entire record, we conclude that Cullins's conviction is not against the manifest weight of the evidence; the trial court could reasonably infer that Cullins had, as at least one of his purposes for having provided false identifying information, the purpose to avoid having to pay for the services he received from the hospital.

**{¶ 27}** Cullins's First and Second Assignments of Error are overruled.

## IV. Conclusion

**{¶ 28}** Both of Cullins's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Michael B. Miller
Hon. Mary L. Wiseman